The judgment of the court was pronounced by
King, J.
The defendants were jointly indicted for larceny; and from a judgment rendered upon their conviction have appealed. The questions which ariscr are presented in two bills of exception, taken to the opinions of the judge on the trial of the cause. The first was to the admission of a free person of color to' testify against the accused, who are white persons.- We have been referred to decisions of the courts of South Carolina and Maryland, in which it has been held, that free persons of color are incompetent to testify in cases in which the' rights of white persons are concerned. It is urged that the rule is founded on the degraded condition of the African in the States where slavery exists,, and should equally prevail in this. The decisions to which we have been referred cannot be considered as authority in our courts. They appear to be based upon statutes which expressly prohibit free persons of color from testifying, not only in criminal, but also in civil cases, in which white persons are’ parties. No such prohibition exists here. In. South Carolina the principle of' exclusion has been carried still further. It has been there held, that free persons of color are incompetent witnesses in any case, in a court of record of that State; although both the parties to the suit be of the same class with themselves. Growning v. Devana, 2 Bailey's Reports 192. 1 McCord, 435. 1 Harris & Johnson, 750. Our legislation and jurisprudence upon this subject differ materially from those of the slave States generally, in which the rule contended for prevails. This difference of public policy has no doubt arisen from' the different condition of that class of persons in this State. At the date of our earliest legislation as a territory, as well as at the present day, free persons of color constituted a numerous class. In some districts they are respectable from their intelligence, industry and habits of good order. Many of them are enlightened by education, and the instances are by no means rare in which they are large property holders. So far from being in that degraded state which renders them unworthy of belief, they are such persons as courts and juries would not hesitate to believe under oath. Moreover, this numerous class is entitled to the protection of our laws; but that protection would in many instances be illusory, and the gravest offences against their persons and property might be *65 committed with impunity, by white persons, if the rule of exclusion contended for were recognized. Their competency must be tested by our own laws on the subject and the received rules of evidence, which, we think, leave the question free from doubt. The general rule is, that all persons are competent to testify, both in civil and criminal matters, except those who are expressly excluded. No incompetency has been declared by our laws with reference to free persons of color. On the contrary, they are included in the article of the code which prescribes the qualifications of the competent witness in civil matters. C. C. article 2260. Certain classes of persons are deemed incompetent to testify in consequence of the legal presumption that it would be unsafe to rely on their testimony. On that ground, those who are deficient in understanding, or who are insensible to the obligations of an oath, or are interested in the cause, are excluded from testifying. The provision of our code, which makes free persons of color competent witnesses in civil matters, is a legislative declaration that they are obnoxious to none of the disqualifying objections which, under the general rules of evidence, exclude witnesses. ít is a recognition that they are prima facie worthy of credit, and that their testimony may be safely received and weighed by courts and juries. No reason has been suggested why a distinction should exist in respect to their competency in civil and criminal cases to which white persons are parties; while weighty considerations present themselves in favor of their admissibility in both. The testimony of manumitted slaves was legal evidence under the Spanish and Roman laws. Under those laws, a slave, after his emancipation, could testify to facts which came to his knowledge while he was in bondage. He was a competent witness in criminal as well as in civil cases, with the single exception that he could not testify in a criminal prosecution other than high treason, against the master who had emancipated him and the members of his family. Partida 3, tit. 16, law 10, 19, 13, 18, and Commentaries of Gregorio Lope# on those laws. We may further add, that the opinion which we express in relation to the competency of this class of persons, is in accordance, so far as our experience has gone, with the uniform practice of our courts, which are in the daily habit of permitting them to testify in prosecutions where the defendants are white persons. The only deviation from that practice, of which we are aware, has been alluded to at bar; but neither the reasons nor the authorities upon which the district judge based the decision in that case have been furnished.
It is further objected, that parol testimony was improperly received to establish the- freedom of the witness. The testimony Was, that the witness was born free, and had always been considered free. No higher evidence, therefore, than parol could have been adduced. A different question would have been presented if it had been proved that the witness had at one time been held in slavery. 7 N. S. 648. 2 Ann. 998. The judge did not, in our opinion, err in receiving the testimony of this witness.
The second bill of exceptions states, that “the jury returned the following verdict.” “ We, the jury sworn to try this case, find Henry Levy guilty, and Dreyfous accessary after the fact.” “ That before the verdict was recorded, and while the jury was yet present in court, his honor, the presiding judge, observed to the jury, that there could be no accessary after the fact, in the case, and if they were of opinion that Dreyfous aided and abetted the other accused after the money had been taken, that he was a principal in the larceny ; upon which the foreman of the jury, without consulting the jury, and without withdrawing for that purpose, immediately erased the verdict first written, and *66 wrote the following verdict, to wit, “guilty; 10th March, 1849; C. M. Hickey, foreman which, being read, was delivered as the verdict of the jury; and the jury being polled agreed to said verdict.”
The judge states that his instructions to the jury were, “that there could be no accessary in the case; that if they were satisfied that Breyfous was present aiding and abetting in the commission of the offence, they were authorized to find him guilty; that the verdict must be guilty or not guilty, as regarded Breyfous; upon which the foreman of the jury observed that the jury intended to find, that Breyfous was present aiding and abetting; whereupon the court instructed the jury to change the form of their verdict, which they accordingly did.”
The instructions given to the jury, as stated by the judge, in relation to their finding, we think are strictly legal. But the subsequent change of the verdict by the foreman, without conference with his fellow jurors, appears to us irregular. The statement of the foreman, that the jury intended to find that Breyfous was present aiding and abetting, is in contradiction with their first finding. The fact which would authorize the conclusion, that the accused was an accessary after the fact, are inconsistent with his presence as an aider and abettor. The foreman may have considered that the testimony established the presence of the accused as an abettor; but he should not have been permitted to speak alone for his fellow jurors, who had just said by their verdict that he was not present aiding in the commission of the offence. That there may be an accessary after the fact in a larceny, under our laws, we think, admits of no doubt; and an acquittal of the accused as a principal would have been no bar to his subsequent prosecution as an accessaiy after the fact. Bullard & Curry, 243, secs. 9 and 10. 4 Black. Com. 40. Carr’s Exposition of the Criminal Laws of Louisiana, 76. When the jury was informed by the judge, that the accused could not, under the indictment, be convicted as an accessary, they should have been permitted to confer together, and if they remained still of opinion that the testimony only established the guilt of Breyfous as an accessary after the fact, it would have been their duty to acquit him. We ai'e not prepared to say that their deliberations on this point, in the presence of the court, would have vitiated their verdict; but the statement is, that the verdict was changed without any consultation whatever between the jurors after the last instructions given by the judge. This irregularity vitiates the verdict, only so far as relates to Breyfous; leaving it unaffected as regards Levy.
It is therefore decreed, that the judgment of the district court, so far as relates to the accused, Henry Levy, be affirmed, with costs; and as relates to Jacob Breyfous, that it be reversed, and the cause be remanded for a new trial.